# United States Court of Appeals for the Federal Circuit

---

**INTERNATIONAL DEVELOPMENT SOLUTIONS, LLC,**
*Appellant*

v.

**SECRETARY OF STATE,**
*Appellee*

---

2022-1992

---

Appeal from the Civilian Board of Contract Appeals in Nos. 6400, 6401, 6700, Administrative Judge Jonathan D. Zischkau, Administrative Judge Kyle E. Chadwick, Administrative Judge Marian Elizabeth Sullivan.

---

Decided: June 26, 2024

---

TODD MATTHEW GARLAND, Haynes and Boone, LLP, Tysons Corner, VA, argued for appellant. Also represented by RICHARD C. JOHNSON, ZACHARY DAVID PRINCE.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY; RANDAL WAX, Office of Legal Adviser, United States Department of State, Washington, DC.

———————

Before MOORE, *Chief Judge*, HUGHES and CUNNINGHAM, *Circuit Judges*.

HUGHES, *Circuit Judge*.

International Development Solutions, LLC (IDS), an armed security service contractor, appeals the final decision of the Civilian Board of Contract Appeals. After finding no entitlement to reimbursement, the Board denied IDS's consolidated appeal seeking cost-reimbursement of tax payments made by related corporate entities. Because substantial evidence supports the Board's finding that IDS did not present evidence that tax amounts paid "were costs incurred by IDS, the contractor," rather than by entities higher in IDS's ownership chain, we affirm.

I

A

Under the Contract Disputes Act of 1978 (CDA), a party to a federal government contract (i.e., a contractor) is authorized to submit, to a contracting officer for a decision, any claims against the federal government relating to the contract. 41 U.S.C. § 7101 *et seq*. If the contractor disagrees with the contracting officer's decision, the contractor may appeal the decision to an agency board of contract appeals. *Id.* § 7104(a).

The Federal Acquisition Regulations System (FAR) provides a broad set of basic policies and information regarding government procurement in the United States, including principles and guidelines for pricing government contracts. 48 C.F.R. § 1 *et seq*. As relevant here, FAR Part 31 sets forth the procedures for determining whether a contractor incurred an "allowable cost" under a government contract. *Id.* § 31.201-2 ("Determining allowability."). Notably, the regulation states that "[a] contractor is responsible for accounting for costs appropriately and for

maintaining records, including supporting documentation, adequate to demonstrate that costs claimed have been incurred, are allocable to the contract, and comply with applicable cost principles . . . and agency supplements. The contracting officer may disallow all or part of a claimed cost that is inadequately supported." *Id.* § 31.201-2(d).

A contracting officer's denial of a claim submitted under the CDA is final and conclusive unless the contractor timely appeals the decision. 41 U.S.C. §§ 7103(g), 7104(a), 7105(b).

B

In September 2010, IDS entered into a contract with the Department of State (State or agency) for the provision of personal protection services in contingency environments, including Afghanistan (Worldwide Protective Services contract or WPS contract). At the time of contracting, IDS indicated it was a joint venture between ACADEMI Training Center, Inc. (ATCI)[1] and Kaseman, LLC. In August 2011 and March 2012, State awarded Task Order 11 and Task Order 9, respectively, to IDS for armed security services in Afghanistan under the WPS contract.

According to IDS, in May 2012, ATCI purchased all of Kaseman, LLC's membership interest in the IDS joint venture, thereby converting IDS to a sole member LLC, with ATCI as the sole member and owner. That same month, IDS asserts that it sold and transferred all of its interests

---

[1] At the time of contracting, the joint venture was between Kaseman, LLC and an entity named U.S. Training Center, Inc. (USTC). However, in December 2011, USTC changed its name to ACADEMI Training Center, Inc. (ATCI), which was later reflected in a March 2012 amendment to IDS's limited liability operating agreement. Appellant's Br. at 6–7. Because USTC is not a relevant entity to this appeal, this opinion only refers to ATCI.

in all of its contracts, subcontracts, and all property and assets to ATCI. *See* J.A. 6974 (Bill of Sale).

Subsequently, on May 29, 2012, pursuant to FAR 42.12, ATCI submitted a written request to State seeking government recognition of ATCI as the successor-in-interest to IDS's WPS contract through a formal novation agreement. *See* 48 C.F.R. § 42.12 ("Novation and Change-of-Name Agreements."). On July 13, 2012, after reviewing ATCI's submission, State determined that it was "not in its best interest to novate its contract with IDS" and denied the novation request. J.A. 7087. As a basis for its decision, State noted that IDS still existed as a separate entity and had "all the necessary resources and support of [ATCI] to continue fully meeting its contractual obligations under the WPS contract." *Id.* Accordingly, IDS was informed that, as the contractor, "IDS should continue to fulfill its contractual obligation as agreed to under the WPS contract." *Id.*

Following the denial of the novation request and aware of State's expectation that IDS "continue fully meeting its contractual obligations," IDS "proceeded for nearly a decade to invoice State in its own name" and "accept payments in its own name" throughout the performance of Task Orders 9 and 11. J.A. 10.

C

According to IDS, at all times relevant to this appeal, ATCI (the immediate parent company of wholly owned subsidiary IDS) was itself a wholly owned subsidiary of a holding company named ACADEMI LLC. IDS asserts that in 2014, Constellis Holdings LLC (Constellis), through a subsidiary, acquired ACADEMI LLC. Collectively, we refer to Constellis and ACADEMI LLC as the ultimate parent companies. There is evidence that ACADEMI LLC held required licenses under which its subsidiaries, including IDS and ATCI, operated while performing armed security services in Afghanistan. IDS asserts that as the license holder, ACADEMI LLC was responsible for paying and filing all

Afghan corporate tax returns with respect to all contract revenues, including those of its multiple subsidiaries.

On June 19, 2012, the Afghan Ministry of Finance notified ACADEMI LLC that the finance ministry was initiating a tax audit covering the period from the outset of any contract performance by any ACADEMI LLC subsidiary through 2012. IDS asserts that after the tax audit was completed around 2017, the finance ministry determined that ACADEMI LLC owed outstanding taxes. Pursuant to a negotiated tax settlement, ACADEMI LLC and Constellis wired six payments to the finance ministry between January 2017 and September 2018. J.A. 7.

D

In September 2018, December 2018, and September 2019, IDS submitted three certified claims to its contracting officer that collectively sought $36,714,278.18 "as reimbursement for taxes representing increased costs of performance of task orders 9 and 11 due to assessment of taxes by the [Afghan finance ministry]." J.A. 8 (internal quotations omitted). As evidence of the increased costs, IDS attached copies of bank statements showing the 2017 and 2018 wire transfers from ACADEMI LLC and Constellis to the finance ministry. J.A. 7974–76. IDS described the wire transfers as "payments that 'IDS made.'" J.A. 8.

In February 2019, the contracting officer issued two separate final decisions denying IDS's first two claims for reimbursement. IDS's third claim for reimbursement was deemed denied in September 2019, after no final decision was issued. In March 2019 and January 2020, respectively, IDS timely appealed the denials to the Civilian Board of Contract Appeals (Board). The three appeals were subsequently consolidated, and on March 18, 2022, after finding "'no evidence' that the amounts paid 'were costs incurred by IDS, the contractor,' rather than by entities higher in IDS's ownership chain," the Board determined that IDS

was not entitled to reimbursement and denied the appeal on the merits. J.A. 1.

On July 7, 2022, IDS timely filed a notice of appeal with this court pursuant to 41 U.S.C. § 7107(a)(1)(A). This court has jurisdiction to review the Board's decision under 28 U.S.C. § 1295(a)(10).

II

This court will set aside findings of fact by the Board only if the findings are (a) fraudulent, arbitrary, or capricious; (b) so grossly erroneous as to necessarily imply bad faith; or (c) not supported by substantial evidence. 41 U.S.C. § 7107(b)(2)(A)–(C). The Board's determination is supported by substantial evidence if "based on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *DG21, LLC v. Mabus*, 819 F.3d 1358, 1361 (Fed. Cir. 2016) (cleaned up). A contractor bears a heavy burden in overturning the Board's factual findings. *T. Brown Constructors, Inc. v. Pena*, 132 F.3d 724, 727 (Fed. Cir. 1997); *see Koppers Co. v. United States*, 405 F.2d 554, 557–59 (Ct. Cl. 1968).

III

On appeal, IDS challenges the Board's ultimate conclusion that IDS was not entitled to reimbursement of the roughly $36 million in taxes paid by ACADEMI LLC and Constellis to the Afghan finance ministry. IDS argues that it presented "uncontested evidence" that IDS's claimed "[c]osts are reimbursable." Appellant's Br. 24. There are two primary issues for us to consider on appeal: first, the identity of the contractor, and second, whether the claimed tax payments are reimbursable costs under the WPS contract. We address each issue in turn below.

A

Only a contractor for the relevant contract (i.e., "a party to a Federal Government contract other than the

Federal Government," 41 U.S.C. § 7101(7)), is statutorily authorized under the CDA to submit a claim against the federal government relating to such contract. 41 U.S.C. § 7103; *see Avue Techs. Corp. v. Sec'y of Health & Hum. Servs.*, 96 F.4th 1340, 1344 (Fed. Cir. 2024). Therefore, the certified claims at issue in this appeal are statutorily required to have been submitted *by the contractor* for the WPS contract.

The Board determined that IDS was the contractor for the WPS contract. J.A. 1–6, 9. In making its determination, the Board relied on witness testimony that IDS was the "entity [that] still legally held the . . . contract and task orders." J.A. 4. The Board also considered the agency's decision not to novate the WPS contract because "IDS still exist[ed] . . . and ha[d] all of the necessary resources . . . [to] continue to fulfill its contractual obligation as agreed under the [WPS] contract." J.A. 3. As IDS even states in its opening brief before this court, "[t]hroughout performance of Task Orders 09 and 11, IDS submitted all invoices for those services to [State]" and "[State] remitted payment to IDS for all services." Appellant's Br. at 12. Thus, the record indicates that the WPS contractual relationship was between IDS and State. Because there is substantial evidence such that a reasonable mind could conclude that IDS was the non-federal government party to the WPS contract, we affirm the Board's factual finding that IDS was the contractor.

IDS alternatively argues that ATCI is the true contractor because, despite State denying the novation request, the WPS contract nevertheless passed to ATCI by operation of law. Appellant's Br. at 33. But this alternative argument is unsupported by the facts found by the Board. *See* J.A. 10. Nor would it change the outcome even if factually supported. The CDA authorizes only *contractors* to submit certified claims against the federal government. Even if IDS were able to establish that the WPS contract had passed to ATCI by operation of law, making ATCI—not

IDS—the true contractor, such a finding does not help IDS in this appeal. ATCI did not submit the certified claims at issue here; IDS did. Therefore, whether ATCI was the true contractor by operation of law does not change the outcome of this appeal, and we need not address the issue further.

Having established that IDS is the contractor and the only party statutorily authorized to submit a claim under the CDA, we turn to the second primary issue in this appeal: namely, whether IDS established that the claimed tax payments meet the regulatory requirements for a reimbursable cost under the WPS contract.

B

As a threshold issue, an incurred cost is not eligible for reimbursement from the government unless it is "properly allocable to the contract" and "allowable" as defined by FAR Part 31. *See* Composition of Total Cost, 48 C.F.R. § 31.201-1(b) ("[T]he allowable costs to the Government are limited to those allocable costs which are *allowable* pursuant to Part 31 and applicable agency supplements." (emphasis added)). An allowable cost is one that meets all five of the following regulatory requirements enumerated in FAR 31.201-2(a): (1) reasonableness; (2) allocability; (3) the applicable accounting standards or principles; (4) terms of the contract; and (5) compliance with "[a]ny limitations set forth in [FAR subpart 31.2]." 48 C.F.R. § 31.201-2(a)(1)–(5). One such limitation includes "contractor[s being] responsible for accounting for costs appropriately and for maintaining records, including supporting documentation, *adequate to demonstrate that costs claimed have been incurred,* are allocable to the contract, and comply with applicable cost principles." *Id.* § 31.201-2(d) (emphasis added). As such, an incurred cost is not eligible for reimbursement from the government unless a contractor can satisfy each of the five relevant regulatory requirements and limitations for an allowable cost under FAR 31.201-2.

INTERNATIONAL DEVELOPMENT SOLUTIONS, LLC v. 9
SECRETARY OF STATE

On appeal, IDS argues that it presented to the Board "uncontested evidence that it met all five [FAR] requirements" for reimbursable costs and "uncontradicted evidence [that] demonstrates IDS," as opposed to its ultimate parent companies, "incurred the tax settlement costs" in question. Appellant's Br. at 24. For the reasons stated below, we disagree.

Determining whether a contractor's claimed cost meets the FAR requirements for allowability inherently requires a contractor to have first *incurred a cost* that is allocable to the contract. *See* Composition of Total Cost, 48 C.F.R. § 31.201-1. The Board found that IDS did not incur the claimed tax costs. If supported by substantial evidence, such a finding disposes of the regulatory requirements issue. Therefore, we address the Board's finding that IDS did not incur tax costs first.

1

The Board concluded that IDS presented "'no evidence' that the [tax] amounts paid 'were costs incurred by IDS, the contractor,' rather than by entities higher in IDS's ownership chain." J.A. 1. In making its determination, the Board extensively considered testimonial and documentary evidence presented by IDS. *See* J.A. 2–8 (identifying evidence related to the identity of the contractor, the taxpayer, and claims for reimbursement).

In reviewing IDS's testimonial evidence, the Board described IDS's witnesses' testimony regarding contract and/or tax related payments and internal corporate accounting structures and procedures as "ambigu[ous]," "confusi[ng]," and "incorrect." J.A. 4 n.3, J.A. 7 n.6. More explicitly, when the presiding judge questioned one of IDS's testifying witnesses—a former vice president of finance compliance for Constellis—and stated that the witness "may not [have been] sure" about which entity was being referred to, the witness responded, "[t]hat is correct. It's a complex legal structure." J.A. 6. Yet this questionable

testimony is the same "uncontradicted evidence" that IDS refers this court to as conclusive proof that IDS incurred the tax costs in question. *E.g.*, Appellant's Br. 24–25 (citing testimony of Constellis's Vice President of Financial Compliance). The Board also noted that some of the "cited testimony" IDS relies on "does not support IDS's assertion[s]." J.A. 8. Therefore, contrary to IDS's characterization, this evidence is neither "uncontradicted" nor conclusive as to whether IDS incurred tax costs. The Board's rejection of this same testimony as unconvincing further illustrates the weakness of IDS's evidence. And we decline to reweigh this evidence on appeal. *See Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984).

Unpersuaded by IDS's testimonial evidence, the Board also considered IDS's documentary evidence, but was equally unconvinced. Specifically, the Board noted that the bank records submitted by IDS as evidence IDS incurred tax costs do not reflect any transaction made by, or to, IDS. Instead, the bank records only show wire payments to the finance ministry made by IDS's two ultimate parent companies. Although IDS's certified claims described those wire payments "as payments that 'IDS made,'" the Board clarified that the payments came exclusively from bank accounts belonging to ACADEMI LLC and Constellis. J.A. 8. Therefore, the Board concluded that based on the physical evidence in the record, these related entities, and not IDS, paid the taxes to the finance ministry.

IDS does not dispute this finding. *See* Appellant's Br. at 32 ("The corporate parents, Constellis and ACADEMI LLC, paid these taxes."). Instead, IDS argues that the Board erred in concluding that payments made by IDS's ultimate parent companies were not "reimbursable to IDS." *Id.* According to IDS, "overwhelming" and "uncontradicted course of dealing" evidence conclusively establishes that ATCI—essentially operating as a subcontractor for IDS—incurred costs that "were reimbursable to IDS under its [WPS contract]." *Id.* at 31–32. But the Board, "[i]n full

possession of th[ose] uncontested facts," already considered and rejected this very argument. *Id.* at 31; *see also* J.A. 11. After reviewing the alleged course of dealing evidence, the Board explicitly concluded that "[e]ven assuming that IDS's parent company [ATCI] was its subcontractor, IDS does not show that [ATCI] owed or paid any taxes to Afghanistan that might 'pass through' to become IDS costs. The taxpayer was ACADEMI LLC. Nor did IDS present evidence that IDS made payments to [ATCI] for services rendered." J.A. 11. The Board also found IDS failed to establish any "legal obligation" by IDS to pay or indemnify ACTI for these payments. *Id.* Based on our review of the record, we conclude that the Board's findings are supported by substantial evidence.

Reasonable minds can conclude that the physical evidence provided by IDS adequately demonstrates that IDS's ultimate parent companies, and not IDS, incurred the tax costs at issue in this appeal. Therefore, substantial evidence supports the Board's determination that the taxes paid were costs incurred by entities higher in IDS's ownership chain, rather than by IDS.

2

Because we affirm the Board's finding that IDS did not incur the tax costs in question, there are consequently no claimed costs which can be "properly alloca[ted] to the contract," and we therefore need not address IDS's remaining arguments as to whether those tax payments met the five regulatory requirements for an allowable cost under FAR Part 31. *See* Composition of Total Cost, 48 C.F.R. § 31.201-1(b) ("[T]he allowable costs to the Government are limited to those *allocable costs* which are allowable pursuant to Part 31 and applicable agency supplements." (emphasis added)). As a threshold matter, in failing to show that IDS incurred a cost that is allocable to the contract, IDS also failed to establish that it is entitled to reimbursement of any costs from the government. *Id.*

IV

Because substantial evidence supports the Board's conclusion that IDS failed to present evidence that tax payments to the Afghan Ministry of Finance were costs incurred by IDS, the contractor, rather than by entities higher in IDS's ownership chain, we affirm the Board's decision that IDS is not entitled to reimbursement.

**AFFIRMED**